# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 07-CR-30089-MJR |
| KYLE KIMOTO, | ) | |
| Defendant. | ) | |

## ORDER

**REAGAN, District Judge:**

### I. Factual and Procedural Background

Following a jury trial, Defendant Kyle Kimoto was found guilty on fourteen counts: one count of Conspiracy, one count of Mail Fraud and twelve counts of Wire Fraud. After the jury returned its verdicts, the Government moved for detention in open court. The undersigned District Judge ordered Kimoto detained pending a detention hearing. Magistrate Judge Clifford J. Proud held a detention hearing on May 29, 2008, and, on May 30th, entered an Order of Detention. Judge Proud found that Kimoto presented a flight risk because he faced a lengthy sentence and had access to substantial sums of money. He also found that Kimoto presented an economic danger to the community because the offenses for which Kimoto had been convicted in this Court were not the first time that he had engaged in fraudulent activity. Kimoto has remained in custody since that time.

On September 5, 2008, the Court sentenced Kimoto to 350 months' incarceration to be followed by five years' supervised release. On September 12, 2008, Kimoto filed a motion for bond pending appeal (Doc. 102). The motion is fully briefed and ready for disposition.

Kimoto submits that, despite the prior findings upon which his detention order was

based, he meets the conditions for release pending his sentencing and appeal of his convictions pursuant to 18 U.S.C. § 3143(b). Specifically, he claims that (1) his appeal will raise "substantial question[s] of law or fact" that are likely to result in reversal, if not a new trial; and (2) there is clear and convincing evidence, given the conditions of release available, that he is neither likely to flee nor likely to pose a danger to the safety of any person or the community.

Kimoto maintains that the issues he will raise on appeal - particularly those issues related to the Government's duty to preserve electronic evidence and the consequences of its alleged failure to do so - present "close" questions. He also contends that the Court could impose conditions of release that would assure his appearance and the safety of any person or the community. Kimoto asserts that he has never been charged with a violent or drug-related crime and that, while any offense may pose a "generic" danger to the community, the Court could restrict or ban Kimoto from participating in any business and from using phones, the internet or other forms of communication.

According to Kimoto, he has never attempted to flee prosecution, and the violation of travel restrictions found by Magistrate Judge Proud was based on a misunderstanding or miscommunication with his Pretrial Services officer. Kimoto contends that the Court could assure his compliance by ordering him to wear a Global Positioning System ("GPS") that could track his whereabouts within a range of a few feet and by requiring his Pretrial Services officer to contact him, in person or by phone, more frequently. Additionally, Kimoto attaches exhibits which show that the Court can obtain substantial financial security, in excess of 2.3 million dollars, against violation of the conditions of release.

Finally, Kimoto contends that his history and characteristics weigh in his favor. He claims that he has close family and community ties to Las Vegas, Nevada, where he lives with his

wife and six children, with other family members nearby. Kimoto asserts that he has no prior substantial criminal record, no history of alcohol or drug abuse and no access to substantial funds, given that he and his wife have turned over all of their assets to receivers as part of a civil judgment against them in the amount of $106,000,000.00.

The Government responds that Kimoto already had a hearing to review his bond and failed to establish that he was not a flight risk and danger to the community. Since the Government previously briefed and argued two prongs of 18 U.S.C. § 3143(b), danger to the community and flight risk, it does not reargue those issues here but rests on the record. However, the Government addresses at length the question of whether Kimoto's appeal presents a "substantial question of law or fact." First, the Government asserts that the Court found no evidence that it engaged in rampant destruction of evidence. Second, the Government contends that, by failing to seek a continuance, Kimoto waived or forfeited appellate consideration of his argument that the Government violated his rights by failing to provide forensic images of various hard drives.

In Kimoto's reply, he contends that the Government, by standing on the record, has waived any objections to newly asserted, specific conditions of release that would ensure that he is not a flight risk. Kimoto also argues that, on two occasions, the Court showed doubt about its decision on his motion to dismiss and, thus, indicated that the outcome presented a "close" issue. Kimoto reiterates his arguments regarding the Government's duty to preserve electronic evidence. He also maintains that there has been no waiver of appellate rights regarding the digital evidence.

**II.     Legal Standard**

Section 3143(b), enacted as part of the Bail Reform Act of 1984, provides in pertinent part that a defendant who has been found guilty and sentenced to a term of imprisonment, must be

detained pending appeal unless the defendant is not a flight risk or a danger to the community and the court finds "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in ... reversal [or] an order for a new trial...." **18 U.S.C. § 3143(b)(1)(B);** *see* ***United States v. Shoffner*, 791 F.2d 586, 588 (7th Cir. 1986) (per curiam)**. As a convicted defendant, Kimoto bears the burden of showing "by clear and convincing evidence" that he is "not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to § 3142(b) or (c)." ***United States v. Queen,* 847 F.2d 346, 350-51 (7th Cir. 1988) (citing 18 U.S.C. § 3143); *United States v. Bilanzich,* 771 F.2d 292, 298 (7th Cir. 1985)**. In ***United States v. Greenberg***, Judge Posner explained that "'substantial' ... must mean that the appeal could readily go either way." **772 F.2d 340, 341 (7th Cir. 1985) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (per curiam)**. "[T]he practical reality [is] that not every difficult decision constitutes a 'close call' and thus a 'substantial question' for purposes of § 3143(b)." ***United States v. Warner*, WL 2931903, 6 (N.D.Ill. 2006)**. The district court must provide a statement of its reasons supporting its ruling on a motion for release pending appeal. ***United States v. Eaken*, 995 F.2d 740, 741 n. 1 (7th Cir. 1993) (citing FED. R. APP. P. 9(b))**.

### III. <u>Analysis</u>

#### A. <u>Flight risk and danger to the community</u>

As to the issues of flight risk and danger to the community, the Court first observes that nothing has changed in this case since Magistrate Judge Proud entered his order detaining Kimoto except that Kimoto has been sentenced to a lengthy period of incarceration. Kimoto's argument that he has raised new conditions to which the Government has waived its objections on

4

these issues is meritless. The record is perfectly adequate for the Court's determination of these issues.

Kimoto is an obvious flight risk. He faces approximately 28 years in prison and has access to substantial financial assets. Where a lengthy sentence is combined with financial assets, "[f]light [is] almost certain to happen." ***United States v. Jones*, 938 F.2d 737, 743 (7th Cir. 1991) (court shared responsibility for flight of defendant who had access to large sums of money and faced a 30-year sentence);** *see also United States v. Taylor*, **31 F.3d 459, 468 (7th Cir. 1994) (concluding "that the fact that a defendant who is facing a possible lengthy prison sentence has nearly half a million dollars in cash on hand was clearly material to the risk of flight.")**.

Weighing in favor of granting bond is the fact that owners of 8 properties are willing to post real estate with a value of 2.3 million dollars to secure the bond. Kimoto's wife is willing to post real estate owned by her with an equity value of $202,862.00. *See* Doc. 102, Exhibit 3. Other family members are willing to post real estate owned by them with an equity value in excess of $644,000.00, with the remainder of the $2.3 million in equity available from others who are either family or friends. *Id*. Additionally, unquestionably, Kimoto has significant family and community ties to Las Vegas, Nevada. He has lived in Las Vegas almost all of his life and has a wife and 6 children living there.

These favorable findings, however, are more than offset by factors that weigh against granting bond. According to the evidence adduced at the May 29th detention hearing, the receiver in the FTC action against Kimoto, *F.T.C. v. Assail, Inc.,* **W03CA007 (W.D. Texas 2003)**, indicated that large amounts of money moved through many layers of transactions, suggesting an attempt to hide funds, and that funds remain unaccounted for. Additionally, exhibits offered by the

5

Government showed that Kimoto and his wife continued to spend money freely, including nearly $75,000.00 during travels in the period June, 2007 to January, 2008, and "personal charges" by Kimoto's wife in excess of $94,000.00 between May, 2007 and April, 2008. This free spending was possible *in spite of* the final monetary judgment of $105,706,000.00 entered some four-to-five years earlier in the FTC action against Kimoto and Assail. These facts belie Kimoto's assertion that he and his wife "have turned over all of their assets to receivers" as a result of the judgment against them in the FTC action. The Court finds that Kimoto has access to substantial sums of money. This finding, coupled with the lengthy prison sentence Kimoto faces, causes the Court to conclude that Kimoto presents a substantial risk of flight.

Another issue raised by Kimoto that this Court has not previously addressed is the travel undertaken by Kimoto in violation of the restrictions of his pretrial release. Judge Proud's July 10, 2007 Order Setting Conditions of Release specified, "The defendant shall ... abide by the following restrictions on his personal associations, place of abode, or travel: Southern District of Illinois and Eastern District of Missouri and the states of Nevada and Utah (and points in between for traveling to and from court)...." Doc. 6, Item 7(c). It is patent that Kimoto was not to travel outside those four states except for necessary traveling between them. That confusion resulted from speaking with Kimoto's pretrial services officer is really not to the point. This was an order of the Court, and it was to the Court that any request for travel outside these restrictions should have been addressed. It is true that Kimoto did not fail to appear at all proceedings as required, but the fact that he traveled in violation of a clear Court order is not reassuring when considering the question of bond.

Finally, Kimoto's suggestion that he be monitored by GPS through the Nevada pretrial services section of the probation department is rejected by the Court. The use of this technology by the federal courts is in its infancy with some districts involved in a pilot program sponsored by the Administrative Office of the United States Courts. The Southern District of Illinois is not involved in the evaluation of GPS nor is it familiar with the pilot program and who qualifies for consideration. One thing is clear, however: if the device is forcibly removed, the offender may abscond. For this reason, the reasons stated above and because Kimoto is currently under investigation for alleged mortgage fraud in Florida, the Court believes continued detention is necessary.

The undersigned District Judge also finds that Kimoto is an economic danger to the community. Kimoto's arguments that he could be adequately monitored and restricted to protect the community are unpersuasive. His fraudulent telemarketing activities clearly demonstrate a propensity to endanger the economic interests of others within the community, particularly those least able to afford such victimization. The evidence shows that Kimoto falsely led consumers with poor or no credit to believe that they would receive a MasterCard or Visa credit card with a credit limit and instead provided worthless pieces of plastic that looked like MasterCards. Hundreds of thousands of consumers fell prey to this scheme. Monitoring Kimoto's internet and telephone access as well as undertaking other measures to prevent him from devising and engaging in schemes that would endanger the community would place an unsustainable burden on pretrial services. For these reasons, the Court finds that Kimoto is an economic danger to the community.

B.     **Substantial Question of Law or Fact**[1]

---

[1] The Court notes that the proposed issues Kimoto may raise on appeal are speculative, since he has not yet filed an appeal.

On the issue of whether Kimoto has raised a substantial question of law or fact, the Court must engage in a two-step process: (1) the Court must determine whether the question raised by the appeal is "substantial"; and (2) the Court must determine whether, assuming the question is decided in the defendant's favor, the Court of Appeals is likely to order reversal of the conviction or a new trial. ***Shoffner*, 791 F.2d at 588; *Bilanzich*, 771 F.2d at 298**. Because the Court concludes that the issues raised by Kimoto are not "substantial," it does not reach the question of whether the Court of Appeals is likely to order reversal of the conviction or a new trial.

Kimoto plans to raise on appeal the following issues: (1) the Government's alleged violation of its duty to preserve evidence; (2) whether certain evidence was properly treated as material covered by *Brady v. Maryland,* 373 U.S. 83 (1963), as opposed to the *Jencks Act*, 18 U.S.C. § 3500; and (3) whether in denying Kimoto's motion to dismiss the indictment the Court relied on inadmissible hearsay.[2] Kimoto maintains that issues related to the Government's duty to preserve electronic evidence and the consequences of its failure to do so are "novel" issues that can present "close" questions for bail purposes. Kimoto contends that he has demonstrated that substantial quantities of digital evidence were not turned over to the defense or were turned over in forms different from that in which they were seized. For example, Kimoto maintains that thousands of e-mails from the Government's witness, Peter Porcelli, were not turned over and may have contained exculpatory evidence.

The Government responds that Kimoto has raised no substantial question of law or fact. The Government separates the issues raised by Kimoto into two categories: (1) the contention that there was rampant destruction of evidence by various agencies before the United States Attorney

---

[2]The Court will not address the issue of hearsay evidence because Kimoto offers only this single, conclusory phrase and makes no argument on the issue.

8

for the Southern District of Illinois had the case and (2) the contention that Kimoto's rights were violated in connection with the Government's failure to provide forensic images of the hard drives seized and maintained by various Government agencies. As to the first issue, the Government asserts that this Court made its ruling based on the fact that there was no evidence to support the claim that any evidence was destroyed and that Kimoto's assertions did not rise above the level of speculation. As to the second issue, the Government maintains that Kimoto waived or forfeited the opportunity to have his expert review the information sought by relying on his motion to dismiss instead of seeking a continuance.

The Court has had numerous opportunities to consider the issues raised by Kimoto, and, as stated in the current motion, "presumably believes that it ruled correctly on those issues[.]" In the Court's Order on Kimoto's Motion to Dismiss, it thoroughly considered the Government's duty to preserve evidence under the standards set forth by the Supreme Court in ***California v. Trombetta*, 467 U.S. 479 (1984)** and ***Arizona v. Youngblood*, 488 U.S. 51 (1988)**. The Court then found, and now reasserts its finding of no "official animus" or "conscious effort to suppress exculpatory evidence" that would establish bad faith on the part of the Government. ***See United States v. Zambrana*, 841 U.S. 1320, 1341-42 (7th Cir. 1988)**. Beyond the requirement of bad faith, Kimoto was unable to meet either prong of the standard of constitutional materiality, *i. e.*, that the evidence possessed exculpatory value that was apparent before it was destroyed and was of a nature that Kimoto would be unable to obtain comparable evidence by other reasonably available means. Kimoto has raised no substantial question of law or fact with reference to his claim that the Government violated its duty to preserve evidence.

9

The Court agrees with the Government that Kimoto waived or forfeited the issue of the Government's providing "native" or "second generation" files rather than forensic images. Kimoto's investigator as well as his attorney, who professed knowledge of computers, received the hard drives in question no later than November 1, 2007. Not until March 17, 2008, however, on the eve of trial, did Kimoto raise the issue of forensic images. On March 27, 2008, Kimoto made the strategic choice to rely on his motion to dismiss rather than seek a continuance. The Government had agreed to the continuance, and, as the Court stated in its May 8th Order, it could not recall a time when it denied a continuance that was requested by the defense and not opposed by the Government. The Court finds no substantial question of law or fact relating to the issue of the provision of forensic files.

Because Kimoto did not elaborate on the alleged admission of hearsay, the Court does not know and will not speculate which particular hearsay objections he believes raise a substantial question or law or fact.

As to Kimoto's allegation that the Court showed doubt about its decision on his motion to dismiss and, thus, indicated that the outcome presented a "close" issue, the Court agrees with the statement of its sister court in *Warner*, that "not every difficult decision constitutes a 'close call' and thus a 'substantial question' for purposes of § 3143(b)." **WL 2931903, 6**.

IV. **Conclusion**

For all of the above reasons, the Court **DENIES** Kimoto's motion for bond pending appeal (Doc. 102).

**IT IS SO ORDERED.**

**DATED this 6th day of October, 2008**

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge