# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 07-CR-30089-MJR |
| KYLE KIMOTO, ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Introduction and Procedural Background

On June 20, 2007, the Government charged Kyle Kimoto with one count of Conspiracy, in violation of 18 U.S.C. § 371, one count of Mail Fraud, in violation of 18 U.S.C. § 1341, and twelve counts of Wire Fraud, in violation of 18 U.S.C. § 1343.[1] A ten-day jury trial commenced on March 31, 2008, before the undersigned District Judge. The trial culminated on April 18, 2008, with jury verdicts of guilty on all fourteen counts against Defendant Kimoto. (Docs. 33-53).

On August 12, 2008, Kimoto filed Motion to Reconsider, Motion for a Judgment of Acquittal and Motion for New Trial (Doc. 88). The Government timely filed a response opposing Kimoto's motion on August 29, 2008 (Doc. 92). Kimoto filed a reply on September 4, 2008 (Doc. 99). The motion having been fully briefed, the Court now rules thereon, beginning with a factual overview and a reference to the legal standard governing these motions.

### II. Summary of Facts

The indictment alleged that Kyle Kimoto and his primary operating company, Assail Inc., with Peter Porcelli and a variety of corporations, engaged in a fraudulent telemarketing scheme.

---

[1] At trial the government abandoned its claims under 18 U.S.C. § 1342 and 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1957.

1

Consumers with poor or no credit were led to believe that, in exchange for an advance fee, they would receive a pre-approved MasterCard or Visa credit card with a credit limit. Rather than receiving a credit card, consumers generally received either an application for a Stored Value MasterCard (a form of debit card) or an unusable plastic card that looked like a MasterCard credit card emblazoned with the MasterCard logo. As a fee for providing this card[2], Kimoto and his co-conspirators debited each consumer's account $159.99 or more, processing several million dollars in electronic debit charges against consumers' bank accounts. Neither Visa nor MasterCard authorized Kimoto to market credit cards on its behalf, and no consumer received a credit card. Kimoto and his co-conspirators also made it extremely difficult for consumers to cancel recurring charges and obtain refunds. Use of the Stored Value MasterCard was also misrepresented in that purchasers were led to believe that using it would improve their credit scores.

### III. Analysis

The Court must first consider its jurisdiction to consider Kimoto's arguments. Kimoto cites no authority nor does he advance any argument as to why the present motion should be considered timely. A motion for judgment of acquittal under Rule 29 may be made within seven days after the jury is discharged, and Rule 33 provides that a motion for a new trial, grounded on any reason other than newly discovered evidence, must be filed within seven days after the verdict or finding of guilty. **FED. R. CRIM. P. 29(c)(1), 33(b)(2)**. A motion to dismiss the indictment must be made before trial except that the Court may hear a claim that the indictment fails to invoke the Court's jurisdiction or to state an offense at any time while the case is pending. **FED. R. CRIM. P. 12(b)(3)(B)**. Furthermore, an untimely post-trial motion that raises additional arguments not contained in previous, timely motions, cannot "relate back" to the previous motions. ***U.S. v. Holt, 170 F.3d 698, 702-03 (7th Cir. 1999)***.

The jury in this case returned a guilty verdict on April 18, 2008. On April 24, 2008,

---

[2]The "package" marketed by Kimoto also included vacation discounts and a long distance telephone discount. Little was said at trial by either side regarding these items. From the little information available about them, the Court believes their value was illusory.

Kimoto filed a timely motion for new trial and renewed motion for judgment of acquittal pursuant to Rules 29 and 33. The current motion, however, was filed nearly four months later. The Seventh Circuit has confessed itself to be "at a loss to understand any basis under federal law or rules of criminal procedure for what is typically described as a 'motion to reconsider[.]'" ***U.S. v. Griffin, 84 F.3d 820, 826 n.4 (7th Cir. 1996)***. "Rules 29, 33, 34, and 35 of the Criminal Rules do allow motions for judgment of acquittal after a jury verdict of guilty, new trial, arrest of judgment, and correction or reduction of sentence, respectively. None of these mechanisms require the court to reconsider the merits of the underlying judgment." *Id*.

While doubtful of the timeliness of Kimoto's motion, without more explicit guidance from the Seventh Circuit, the Court is reluctant yet tempted to dismiss the motion in its entirety as untimely. The Court also notes that, with one exception, discussed below, the Government has not advanced this argument. Therefore, the Court will address Kimoto's arguments in turn.

### A. <u>Hearsay</u>

Kimoto advances two arguments based on hearsay. He contends that the Court erred in considering the deposition of Charles Davidson, Kimoto's information technology manager, and the video statement of Joel Best, vice-president of Assail, because the statements were hearsay.

#### *Charles Davidson*

Kimoto argues that Davidson's deposition was not admitted at the April 10, 2008 hearing on Kimoto's motion to dismiss but was apparently admitted *after* the hearing and over Kimoto's objection. Kimoto now argues that the deposition was hearsay and falls within no exception to the hearsay rule. His arguments are twofold: (1) Davidson was not an agent of Assail at the time the deposition was offered into evidence and (2) Davidson's deposition does not fit within the "prior sworn testimony" exception to the hearsay rule because he was never "unavailable." According to Kimoto, the Court indicated during the hearing that it was inclined to admit the deposition under FED. R. EVID. 801(d)(2) because it was a statement "by a party's agent concerning a matter within the scope of employment." However, Kimoto contends that Davidson

3

was not an "agent" because the employment relationship between Davidson and Assail ended on January 15, 2002. Kimoto also maintains that his involvement in the FTC litigation ended eight months before the Davidson deposition was taken and, thus, Kimoto had neither the right nor the opportunity to cross-examine Davidson.

Citing FED. R. EVID. 1101(d)(3), the Government responds that the Federal Rules of Evidence do not apply to "miscellaneous proceedings." The Government points out that, when a jury is not involved and the guilt or innocence of the defendant not directly at stake, the judge need not become preoccupied with the rules of evidence and may rely on hearsay and other evidence that would not be admissible at trial.

Moreover, the Government contends that the "statement" was not hearsay under FED. R. EVID. 801(c) because it was not "offered in evidence to prove the truth of the matter asserted." The Government maintains that the deposition was offered to rebut the central argument in Kimoto's motion to dismiss: that the Government acted in bad faith in destroying or failing to preserve exculpatory evidence. The Government asserts that it offered the transcript of the deposition to show that Kimoto himself was involved in the "rampant destruction of both physical and electronic evidence," and, thus, there was no objective basis to believe that the evidence allegedly destroyed by the Government would be exculpatory. Consequently, according to the Government, the transcript was not offered to establish that Kimoto actually destroyed evidence but to show the Government's corporate state of mind, *i. e.*, that since Kimoto himself had destroyed significant quantities of evidence, it was unlikely that the evidence was exculpatory. On this basis, the Government contends that the transcript was relevant to both the knowledge and good faith of the Government.

Kimoto replies that the Government has changed its position in light of Kimoto's evidence. Specifically, Kimoto contends that the Government for the first time asserts that the Davidson deposition was not offered for the truth of the matter asserted. Kimoto maintains that the Government relied upon the deposition for the truth of the matter asserted and that the Court

considered these facts and legal positions in its previous rulings.

The Court has carefully reviewed the transcript of the proceedings in which the Government tendered - and Kimoto objected to the admission of - Davidson's deposition. Mr. Draskovich, Kimoto's lead trial counsel objected to the admission of the deposition, asserting that the deposition was one-sided with no cross examination and no attorney present except the Government's attorney.[3] Transcript of April 10, 2008 hearing ("Tr.") 158:3-20. Upon the Court's inquiry, Assistant United States Attorney Reppert responded that, to his knowledge, the deposition was noticed, and, in any case, it should come into evidence because the proceeding in which it was being introduced was a motion hearing and not a full-blown trial. Tr. 159:1-11. Mr. Reppert further stated that the deposition was "highly relevant to establish their IT director described the destruction of backup tapes, the purging of e-mail." Tr. 160:3-5. The Court inquired whether the deposition was admissible under FED. R. EVID. 801(d)(2) as a "statement by a party's agent concerning a matter within the scope of employment[.]" Tr. 160:10-12. Mr. Reppert, who had identified Davidson as an employee of Assail, said that it would be. Tr. 160:7-13. Mr. Draskovich responded, "Once again, hearsay rule, which is only one requirement the Government needs to fulfill." Tr. 160:14-15. Mr. Draskovich then submitted that Kimoto has a right to cross-examine witnesses and that "it is almost a confrontation clause issue." Tr. 161:2-8. The Court then summed up as follows:

> The problem I have, Mr. Draskovich, with your motion is this. Let's say the Federal Rules allow a statement of a co-conspirator or agent regarding a matter within the scope of employment and that doesn't even have to be under oath, either of those. Here we have under oath statement, so there is more indicia of reliability than otherwise would be admissible.... I am going to take it under advisement and do research on it; my gut, on brief research, what I have done here, is it comes in. If you can find something on point, please get it to me. I would be happy to look at it. Tr. 161:19-162:8.

Nothing further was offered by Kimoto, and the minutes reflect that Davidson's deposition, Government's Exhibit 8, was offered and admitted at the hearing. *See* Doc. 43.

---

[3]The Court notes that there is an error in the transcript. It appears that Mr. Draskovich misspoke, stating, "In this case we have a one-sided deposition by a Government attorney, no attorney representing Lashawn Johnson." Mr. Draskovich meant, "no attorney representing Charles Davidson." Lashawn Johnson was the Government attorney who deposed Davidson.

5

The Government represented to the Court that Davidson was an employee of Assail. Kimoto failed to apprise the Court during the hearing that Davidson was not an employee or agent at the time his deposition was taken. Given the information available at the time, the Court ruled that the deposition was not hearsay but was admissible under the Federal Rules of Evidence for all purposes as a statement of an agent regarding a matter within the scope of employment. *See* FED. R. EVID. 804(d)(2)(D).

Four months after the hearing, Kimoto now seeks to make the objection that should have been made contemporaneously. Because he failed to make a timely, specific objections, those objections are forfeited. ***United States v. Johnson,* 26 F.3d 669, 678 (7th Cir. 1994) (objection forfeited because defendant failed to make a timely, specific objection)**. " As our Supreme Court recently stated in ***United States v. Olano*, 507 U.S. 725, 731 (1993)**, " '[n]o procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'[.]" ***Id*. (citing *Olano,* 507 U. S. at 731) (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944); *see also United States v. Spiller*, 261 F.3d 683, 731 (7th Cir. 2001); *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir.1998) (party's objection at trial must be "proper, timely and specific" and must "alert[] the court and opposing party to the specific grounds for the objection")**.

The Court accepted the Government's representation that Assail had notice of the deposition. Kimoto owns Assail, and Assail's motive to develop the testimony was the same as if Davidson had testified live in the hearing. *See* FED. R. EVID. 804(b)(1). Furthermore, there was no representation by Kimoto during the hearing that Davidson was available.

Even if the Court had not determined that the deposition was admissible under Rule 804, the deposition is not excluded by the hearsay rule under the catch-all hearsay exception, Rule 807. As set forth above, after hearing argument from the Government and Kimoto, the Court found that Davidson's deposition was taken under oath and, therefore, had "equivalent circumstantial

6

guarantees of trustworthiness." As the Government argued, the deposition was "highly relevant" to the issue of alleged destruction of evidence by the Government because "their IT director described the destruction of backup tapes, the purging of e-mail." Tr 160:3-5. The deposition of Kimoto's IT director regarding Kimoto's own destruction of electronic evidence was more probative on this point than any other evidence the Government was likely to procure. Thus, the deposition was not excluded by the hearsay rule because (1) it was offered as evidence of a material fact; (2) it was more probative on the point for which it was offered than any other evidence which the Government could procure through reasonable efforts; and (3) the general purposes of the rules and the interests of justice were best served by admission of the statement into evidence. *See* FED. R. EVID. 807. The evidence of Kimoto's guilt, sans Davidson's testimony, was overwhelming, so its introduction, if error at all, was inoffensive. For all of these reasons, the Court will deny Kimoto's motion as to the admission of Charles Davidson's deposition.

### *Joel Best*

Kimoto makes similar arguments regarding the Court's consideration of the videotaped testimony of Joel Best, which was offered by the Government at the April 14th hearing on Kimoto's motion to dismiss.[4] He contends that the Government cannot argue that Best was unavailable and that Kimoto had no opportunity to cross-examine Mr. Best. Kimoto states that neither he nor his counsel were invited to the taping of his testimony. Finally, Kimoto asserts that the Court already held Best's statements inadmissible and struck all language concerning Best's statements from the indictment.

The Government essentially responds that all of its arguments relevant to Charles Davidson's deposition are equally applicable to Best's sworn video statement. Kimoto makes no further argument on this issue in his reply.

Joel Best, Assail's vice-president, testified in a sworn video statement at the U. S. Attorney's office on May 21, 2007. The Court cannot find - nor has Kimoto pointed to - any

---

[4]This testimony was not used at trial.

contemporaneous objection to the introduction of this evidence. The Government attached an excerpt of Best's statement to its response to Kimoto's motion for a new trial. *See* Doc. 59, Exhibit G. Kimoto filed a 21-page reply (with exhibits, 138 pages), which contains not one reference to the introduction of the Best statement into evidence. Thus, Kimoto waived the objection he now seeks to raise.

Additionally, the video testimony is admissible under FED. R. EVID. 801(d)(2) because it was a statement "by a party's agent concerning a matter within the scope of employment." Moreover, there was no representation by Kimoto at any time that Best was available. *See* FED. R. EVID. 804(b)(1). In the alternative, as above, the video statement is not excluded by the hearsay rule under the catch-all hearsay exception, Rule 807. Best's video statement was taken under oath and had "equivalent circumstantial guarantees of trustworthiness," in that it was adverse to Best himself because he admitted being complicit in destroying evidence. It was relevant to a material fact - the destruction of evidence alleged by the Government. Since Best witnessed the destruction of evidence and had a "burn party" at his home, his statement was more probative on this point than any other evidence the Government was likely to procure. Furthermore, the general purposes of the rules and the interests of justice are best served by admission of Best's video statement into evidence. *See* FED. R. EVID. 807.

For all of these reasons, the Court will deny Kimoto's motion as to the admission of Joel Best's video deposition.

### B. "Safe Harbor" Discussions

Kimoto contends that, in its decisions on Kimoto's motion to dismiss and motion for a new trial, the Court relied extensively on the Government's assertions regarding post-motion conversations with defense counsel. Kimoto asserts that these assertions are inaccurate and that he wishes to clarify the true circumstances of these conversations. According to Kimoto, on March 27, 2008, the Government offered to have "safe harbor" discussions with Kimoto in order to resolve a discovery issue. Kimoto maintains that, during these discussions, the Government stated that it had

given the defense all of the important digital evidence in its possession. Kimoto claims that the Government later acknowledged that the contents of a box of hard drives in the evidence room had not been placed on the drive given to Kimoto by the Government. According to Kimoto, these facts show that the Government had knowledge of evidence that existed and that had not been provided to the defense.

The Government responds that it provided open file discovery and that everything was made available. The Government asserts that it took the unprecedented step of shipping original digital evidence to Kimoto's examiner. According to the Government, Kimoto had ample time to examine the native files provided by the Government and chose, as a litigation tactic, not to ask for a continuance to fully analyze the forensic images. The Government maintains that its refusal to request forensic images from the Federal Bureau of Investigation in another Division was reasonable because Kimoto failed to provide a specific reason why a forensic image was needed, especially when he had been provided with native files as well as a roomful of documentary evidence.

The Court finds no reason to revisit this matter. As to the motion to dismiss, Kimoto has provided no relevant information that the Court has not previously considered at length. *See* Doc. 66, Memorandum and Order. That Kimoto did not feel that the Court would entertain a motion for a continuance certainly does not excuse the failure to make such a motion if it was justified. Furthermore, the Court will not consider this evidence as to Kimoto's motion for a new trial because it was not raised in the original motion. Pursuant to FED. R.CRIM.P. 33(b)(2), a motion "for a new trial a grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty...." ***United States v. Ogle,* 425 F.3d 471, 476 (7th Cir. 2005) (quoting FED.R.CRIM.P. 33(b)(2))**. Kimoto does not maintain that his motion involves "newly discovered evidence," nor, from the Court's perspective, is new evidence involved. As the Government points out, the Court cannot allow Kimoto to defeat the Rule by creating a back door for raising additional grounds for a new trial after the 7-day period has expired. ***See United States v. Holt,* 170 F.3d 698, 703 (7th Cir. 1999)**.

C. **The Sierra Deposition and Exhibits**

Kimoto contends that the Court wrongly classified the demand for e-mails from Roger Howard as a *Brady* issue rather than on raising rights guaranteed by the *Jencks Act*. Kimoto asserts that he sought production of e-mails which were discussed in an FTC deposition of James Sierra and which were allegedly exhibits to the deposition. The e-mails discussed Roger Howard's "inability to fulfill the cards" and that his inability was "tantamount to wire fraud."[5] According to Kimoto, these e-mails could have been used to impeach Howard on the stand because he testified at trial that he had no issues fulfilling the cards. Kimoto maintains that the e-mails were "statements" of Howard and thus, had to be provided under *Jencks*. Kimoto also argues that he had settled out of the FTC litigation five months prior to the Sierra deposition and, thus, had no rights to discovery of the Sierra Exhibits or cross examination of the deponent.

The Government responds that it previously supplied Sierra's deposition and that it has no record of having had exhibits to this deposition. The Government contends that Kimoto did not request this exhibit until after Howard testified in spite of the fact that the Government had provided open file discovery and had produced its *Jencks Act* statement months in advance of trial. According to the Government, not every pre-existing document is a *Jencks Act* statement which must be located, obtained and produced. The contents of the e-mails are speculative because neither the Government nor Kimoto appears to have them.

Kimoto replies that the Government refused to provide Howard's e-mails and has materially changed its position to avoid case law that is on point. Kimoto states that he was no longer involved in the FTC litigation at the time of Sierra's deposition and, thus, could not have been present when it was taken. Kimoto maintains that the contents of the e-mails can be ascertained in the context of Sierra's deposition and that the Government was required under the *Jencks Act* to provide them.

The Court exhaustively considered Kimoto's contentions in its Order on Kimoto's

---

[5] In Kimoto's reply, he several times refers to this as "paramount to wire fraud."

10

motion for a judgment of acquittal or a new trial. *See* Doc. 72. Nonetheless, Kimoto again raises the issue of the Sierra deposition and exhibits thereto, asserting that the Court erred in classifying the demand for e-mails as a *Brady* issue rather than a *Jencks Act* issue. Under the *Jencks Act*, "witness statements *in the possession of the United States* which relate to the subject matter as to which the witness testifies shall be turned over to the defendant for examination and use." **United States v. Elem, 269 F.3d 877, 882 (7th Cir. 2001) (citing United States v. Radix Laboratories, Inc., 963 F.2d 1034, 1039 (7th Cir. 1992) (emphasis added)**. According to the Government, these exhibits were never *in its possession*.

Kimoto does not argue that the Government failed to provide the Sierra deposition to him. Yet not until *after* Howard testified did Kimoto demand production of the e-mail exhibits to the deposition. Kimoto maintains that the contents of the e-mails can be ascertained in the context of Sierra's deposition. Kimoto cannot bide his time until well beyond when these exhibits could have reasonably been requested and possibly obtained, and then hope to secure a new trial because they have not been produced.

Even assuming, *arguendo*, that the Court should have classified the material under the *Jencks Act*, Kimoto's arguments must fail. "Although the text of the Act does not itself require a demonstration of prejudice, courts have held that relief may not be granted under the *Jencks Act* without such a showing." **Elem, 269 F.3d at 882 (citing United States v. Johnson, 200 F.3d 529, 535 (7th Cir. 2000) (collecting cases)**. As the Court found in its May 27th Order, "[t]he Government did not suppress this evidence because it was available to Kimoto through the exercise of reasonable diligence." The Sierra deposition was taken by the Federal Trade Commission in **F.T.C. v. Assail, Inc., W03CA007 (W.D. Texas 2003)**. Although neither Kimoto nor Assail appeared for the deposition, Assail's officers, Mike Henriksen and Joel Best, appeared by telephone. The Department of Justice, however, was not a party to this action, which was prosecuted by the FTC, an independent agency with the ability to litigate in federal court. The Court finds that Kimoto suffered no prejudice; therefore, any failure on the Government's part to produce the exhibits

11

would not warrant a new trial. *Elem* at *id.* **(citations omitted)**.

Additionally, the Court reiterates its conclusion that, even though neither Kimoto nor Assail were still a part of the FTC action at the time of the deposition, they were certainly aware of it. As the Government points out, the U. S. Attorney for the Southern District of Illinois and the U. S. Postal Inspection Service were not involved in the FTC litigation. Kimoto neither asked for the exhibits nor issued a trial subpoena for them. The Government is not required to conduct Kimoto's investigation for him. ***See United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (no duty imposed "on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue")**.

      D.      <u>"Exceptional case" standard</u>

Quoting *United States v. Reed,* 875 F.2d 107, 113 (7th Cir.1989), the Court stated in its May 27th Order, that when considering a motion for new trial, "Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" *See* Order, Doc. 72. The Court remains of the opinion that this is not one of those "exceptional cases" in which it would be a "manifest injustice" not to grant a new trial. ***Reed*, 875 F.2d at 114**. The Government's case contained an overwhelming amount of evidence supporting the jury's guilty verdict.

### IV. <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Reconsider Motion for a Judgment of Acquittal and Motion for New Trial (Doc. 88)

      **IT IS SO ORDERED.**

      **DATED this 10th day of October, 2008**

      **s/Michael J. Reagan**
      **MICHAEL J. REAGAN**
      **United States District Judge**